May it please the Court, good morning, Your Honors. My name is Gary Rosen. This is a very important case to construction contractors, subcontractors, and owners of real properties throughout New York State. The decision of the Court below changes New York lien law's definition of what constitutes a permanent improvement. The holding of the Court below will be cited in the future in New York State courts for the proposition that nothing constitutes a permanent improvement because it can be removed from the property. This case has already been cited by two New York State Supreme Courts, and the holding in this case, which the Court below decided that the improvements made by the appellant, which was over $2 million worth of work, and that none of the $2 million worth of work were permanent improvements, which is contrary to New York lien law. We're talking about equipment, furnishings. I mean, how are those things permanent improvements? Yes, so- Sinks, a fish tank apparently. Yep, Judge Chin, I'm going to explain in that some of the items were movable. Some of the items can be argued were not permanent improvements, but installation of steam booster pump, walk ranges installed, installation of range hoods, which cost over $80,000 to install, installation of fire master, fire suppression system, and fire safety equipment with a cost of over $136,000, mounting of double tank systems on the walls for fire suppression systems, installation of condensate drains, which are connected to the plumbing system, installation of six sets of high pressure valves. The point of section 39A, though, is that if you're lumping in things that shouldn't be in, so maybe it's a mixed bag, but if you're lumping in things that shouldn't be in there, that's willful exaggeration. Isn't that the issue here? So, Judge Park, yes, it can be construed that some of the items could be construed as items that are not covered by the lien. However, the view of the contractor was that most of the items were permanent improvements, including a refrigeration system for $137,000. It was over $2 million worth of work that our client did and was paid, I believe, about $1.7 million. So, I don't believe that the court below could say with the evidence that there was $2 million worth of work that was not a permanent improvement. Yes, a fish tank can be removed. That could be construed. There's cases in New York State courts where judges have ruled that some of the items are permanent improvements and some of the items are not permanent improvements. How about the $165,000 without the signed change orders that later Mr. Stersly signed? So, that's an issue between the contract, the appellant, and the Don Catering, which was its customers. And there's law in the state of New York that if a contract is directed to perform the work, for example, by the architect, then the architect says, no, you must do this work that's part of an AIA, an American Institute of Architect contract, and that if you're directed to do the work, you have to do the work, whether you get a change order or not, and then you can make your argument later. That's a very de minimis amount of the $2 million for the change orders. So, in the whole scheme of the contract, there was over $2 million worth of work, and the court below said- Is the contract an agreement for the sale of goods covered by the UCC, the forum I'm talking about? No, I don't believe it is the sale of goods. Absolutely not, because the contract was an AIA contract, which is for the furnishing and installation of materials for the construction of a restaurant. So it's not as if a supplier issued an invoice to a customer and sold goods. So this case, when you read the decision of the court below and some of the motions, the affidavits in support of a motion for summary judgment. You might think that, this customer, Mr. Dadang, was purchasing refrigerators, stoves, ovens. That is not exactly what it was. What it was, the majority of the work that- The record includes testimony of Mr. Turner, that most of the things were movable and therefore not permanent. Is that part of the record? I believe it is. There are specifics that, even if things are movable, there are cases in New York State, such as Monroe Savings Bank. Mr. Turner testified that Baring did not complete any HVAC or plumbing or electrical work in the premises? Mr. Turner was one person of several that were deposed. Well, he was the vice president and project manager of Baring, right? And he so testified? He did testify to that, but that is not what the evidence shows. The evidence shows that they installed refrigeration equipment. They installed fire suppression systems. A fire suppression system is not meant to be removed. In Monroe Savings Bank versus First National Bank of Waterloo, appliances, ranges, dishwashers, refrigerators, air conditioners, clothes washers and dryers delivered to and or installed in an apartment complex were deemed permanent improvements under New York lien law. There's apparently, there are photographs in the record showing that everything was indeed removed. I'm glad you brought that up, Judge Chin, because the photographs, anything is capable of being demolished, anything. An elevator, under New York lien law, is a permanent improvement, but an elevator can be removed, and it is removed. A fire suppression system under New York lien law- Some things can be removed simply by unscrewing the screws and removing an elevator obviously would be much more complicated. Yes, but in this case, mobile carts can be removed. A fire suppression system, no, it cannot be easily removed. A fire suppression system is absolutely a permanent improvement. Did Mr. Turner testify in his deposition that the items that were attached to the walls could be removed without damaging the property? Yeah, anything can be removed. Anything can be- Without damaging or altering the property. Yes, but anything, a fire suppression system under, well, there's other cases in Campagna Development Corp versus UCM Interior Designs. Carpeting was deemed a permanent improvement, carpeting. So can carpeting be removed? Of course it can be removed. So how- I'm misunderstanding the reasoning here, but if some of the items were not properly liened against, and that was found to be willful. Yes. Is the whole lien not void because of that? No, the cases have been that if you have a lien and 80% of your items are legitimate permanent improvements, and 20% of the items are not, the court can say these items are not- Are willfully exaggerated. Yes, these are willfully exaggerated. And if certain items are willfully exaggerated, the remedy is a penalty of the lien amount for that item. For those items, the penalty and then the cost associated with it. Yes, Judge Block. Yes. Okay, so your argument is that the fish tank should come out maybe, but the rest of it is- Absolutely. Because what happens is, if the law stays the way it is with this decision, there's judges all over the state of New York that are going to say, anything is removable. Exactly what Judge Chin basically asked. Anything is removable, therefore nothing is liable. Did you make an argument below trying to apportion the amount of the lien that some of it was for permanent improvement, some of it was not? I believe we conceded certain items, but we absolutely did not concede that 2 million- As you said earlier, 1.7 million was paid. Yes. So there was 300,000 left. Yes. Was there a way of attributing any portion of that to permanent versus non-permanent? It would have to be, well that's why it needs a trial. Because a finder of fact would determine which items were completed, and it would be 1.7 million. Which items were not completed- Did you make this argument below to the trial court that we need to have a trial? Absolutely. Apportion? We made the argument that a jury trial is required in this case. And it's permitted under the law. I understand that you're arguing a trial, but specifically on the issue of whether there ought to be an apportionment. And you let the jury decide what is permanent and what is not. Our position in the court below was that if there are items that are accessory items to the main work, then there is no willful exaggeration, those items are covered. So if you have a mobile cart, but it's in connection with ovens, and in the ovens, mobile carts come out, or refrigerators. So our client installed big refrigerators, and they have mobile carts in the refrigerators. Because the mobile carts were accessory to these $50,000 refrigerators, we believed that that is not a willful exaggeration of a lien. And most of these items in this entire $2 million work, most of these items, the attention has been drawn by the other side and by the judge and the court below that telling the court about the items that were mobile. But nobody, the decision doesn't talk about the refrigeration systems, these fire suppression systems, these take plumbers to install. They're affixed to the property. It's no different than an elevator. An elevator can be removed, so can a fire suppression system. So what the court below should have done is say, we need to have a trial to determine what items were permanent improvements, what items were not permanent improvements. But for the court below to say that of the $2 million worth of equipment that you furnished and it's going to create havoc in the state of New York for judges and contractors. Thank you, Mr. Rizzo. Thank you, Judge. Preserve some rebuttal time. Thank you, judges. Please bear with me a second. May it please the court. My name is Mitchell Hetted and I represent 3BP Property Owner LLC and Westchester Fire Insurance Company. The district court properly found that bearing willfully exaggerated the lien amount in two ways. First, the entire lien amount was based on removable personal property and improvement to real property. Second, by including over $165,000 in unsigned and unenforceable change orders in violation of bearing's contract with the DONG. The $165,000 in change orders may be minuscule with respect to the entire contract amount, but it was more than 50% of the lien amount. The lien was properly discharged as willfully exaggerated. And the district court properly awarded owner, 3BP Property Owner, statutory damages, bond fees, and attorney's fees pursuant to lien law 39A. There was no need for a trial regarding bearing's exaggeration of its lien. A lien law section 39 claim, just like any claim before the federal or state courts. Weren't there some services provided installing the equipment? If there's services provided in connection with a non-lienable item, they too are non-lienable. So as I was about to get into, Baring's project manager testified that Baring performed no demolition, no alterations, no boring, no plumbing, no electrical work. It did not even hook up its equipment. And that nothing Baring did constituted a permanent improvement. The evidence was overwhelming and based in large part on Baring's own documents, its contract, its lien law 38 response, and Baring's own witnesses testimony. The contract was in fact an agreement for, quote, furniture, furnishings, and equipment by the UCC, that's in volume three at item 600 and 614 of the record. What about the fire safety equipment? Was that something that was a permanent improvement? Mr. Chin, Mr. Chin, excuse me, Judge Chin, I apologize. Baring's project manager testified that could easily be removed. You saw the before and after pictures in the record at 1407 and thereafter. After those items, specifically the fire suppression system, is listed on the auctioneer's schedule of items that were purchased by the winning bidder. Whether the auctioneer abandoned it doesn't make it any more or less a permanent improvement. It was in fact removed, and Baring's project manager said it could easily be removed. It is part of a kitchen. Just because it's removable, does that mean that that was the intent of the parties when they agreed to the work? Well, the intent of the parties, we have to remember that the Don was a tenant. It occupied space for a term of years. Its lease with owner said at the end of the lease term, you'd have to take out tenant's property, a defined term in Article 14. Tenant's property is defined as personality, equipment, and trade fixtures. Everything here was a trade fixture. It was installed during the lease term for the purposes of the tenant's use of the premises. Article 24, I'm sorry. No, I think I understand that argument based on the contract with the Don. Let me ask you this then. What about that putting a lien on all of it indicates willfulness? What was the evidence for that? Well, the evidence was undisputed, it was conclusive, and it was based entirely on Baring's own witness's testimony. Baring's president and controller testified at their depositions that they did nothing to verify that the amounts claimed were actually due. Or that Baring had made any permanent improvement to real property. The suggestion there is that that was somebody else's job, not necessarily that he did or did not do it. That's the way I read that. Well, they testified- That gets you there. Well, Baring's controller, who authorized the filing of the lien. She knew that a lien could only be filed in connection with a permanent improvement of real property in New York. She never stepped foot in the Don's premises. She never checked to make sure that all the signed change orders were, in fact, appropriate under the contract. She never did anything to speak to the project manager, nor did Baring's president, to verify- Is that willfulness, or is that recklessness? No, Your Honor, that is willfulness, and that is exactly- Willfulness is the- Why is it willfulness? Willfulness is the intentional inclusion of non-lienable items in a lien. But you just said she didn't check whether the things that were on there should have been on there. That's still different from intending to put things that shouldn't be on there. Baring knows what it sells. Baring knows that a fish tank, that refrigerators on wheels, that tables that are freestanding, that items that are screwed to the wall that can be easily removed without material damage or any damage to real property. All of these things are not, they knew it wasn't a permanent improvement because that's their business. And they therefore- So do we make a determination that the record is conclusive on willfulness here based in part on the statements that you referred to by Hendrick and her boss? And on the nature of the items themselves, the fact that the evidence is clear that these were all removable, essentially trade items? Yes, Your Honor. I mean, the lien law 38 response lists every item that they put in. Baring knew that prior to filing the lien. They had to have known- What if the only thing was the fire suppression system? That seems like, I don't know, a little bit more ambiguous, not take out the fish tank. Then is that willful, that she didn't go there and check whether that was actually part of the plumbing and fixture? There is no rule of apportionment in New York. If you include items- I'm asking a hypothetical question. What if it was only a fire suppression system and she didn't check? Is that willfulness? Yes, Your Honor. Why? Because a liener has a duty under New York law. It's very easy to file a lien. Anyone can sign a piece of paper, slap a lien on a building. This lien was a technical violation of my client's billion dollar mortgage on a 40 story office building. We had to go out and bond the lien. We had to defend this action. There are penalties for lieners who willfully and unscrupulously certify that the items that they file a lien for are permanent improvements to real property and the amounts. And that's the policy of what section 39 and 39A- So in your view, willfulness requires the diligence that the law requires to certify. Well, it does, Your Honor, because if you look at the lien itself, and that is at the record. And this is actually- Yeah, I'm just trying to understand what the difference is between a negligent failure, she missed something, or a reckless- Because a liener has to certify on the lien itself under oath that all of the items constitute permanent improvements to real property. And if you look at the lien itself, you will see that there is a certification signed by New York Liens. And then right behind it is a certification by the controller, certifying that all of the statements in that lien are true. That is a serious requirement to protect against fraudulent and unscrupulous- So they're certifying something to be true when they didn't know that it was true? Well, not that they didn't know, they have affirmative obligation to know. Well, they ignored knowing, maybe, but I think there is a slight difference. It's almost like constructive intent is what constructive willfulness, if there's such a thing. They certify the truth of statements that they didn't know to be true, and they didn't bother to check whether it was true. Well, the project manager knew. He was there on a day-to-day basis. He was the one who installed everything and delivered everything. And he was the one, had they even offered to ask. I mean, Barron's president knows the business. And he clearly knows what was sold. He's the one who signed the contract. So you have Barron's president, you have a vice president project manager who was there on a day-to-day basis. And to the extent that the president delegates to the controller, it's part of the control group. And it shows that the corporation knew and willfully exaggerated the lien from the get-go. I see my time is up. I'm happy to rest on my briefs. I would just ask for the, there is a motion before this court with respect to the attorney's fees to submit unredacted invoices so that this court will have before it the same evidence before the district court. And if there are no questions, I yield my time. Thank you. The work performed by Barron. First of all, Barron believed that installing a fire suppression system and very large range hoods were permanent improvements. The work performed- What's the evidence in the record of that? Well, the work performed is on A762, the 802 which shows all the work performed. And the photographs, I think photographs will tell the story that if you see the fire suppression system, if you see the hoods, you'll realize these are more than carpeting, which carpeting is a permanent improvement. So- The question is, what's the evidence that they knew that this was permanent work for purposes of the lien law? So the issue for Barron with whether it's permanent or not, they're not lawyers. They don't know the definition under New York lien law, what a permanent improvement is. But they installed these for the dong catering to be permanent. And contrary to what my adversary said, section 801 of the lease on record A76 says that all improvements made to the premises shall remain with the premises. This doesn't, it's contrary to what we just heard that, oh, everything gets removed. No, that's not what the lease between the dong and the appellee said. So everything that was put in was to remain. The only reason that items were removed is because the dong filed for bankruptcy protection and under the bankruptcy order, and I believe that the appellee wanted everything removed because they wanted to demolish everything. And they wanted the demolition to be on the cost of the tenant in the bankruptcy court, not the cost of the landlord, the appellee. So they wanted everything removed. The, and I think I said the photographs pages A1410 to A1500. So the intent of the parties, it was the intent of the appellee and the dong had nothing to do with the intent of Barron. The intent was that there was $6 million of tenant improvements that the landlord required the tenant, the dong, to put in escrow when they signed the lease. So the dong was paying, had to have $6 million in escrow, which they did, and it's in the record. And of the $6 million, the $6 million would get released as work is being done. And work was done in accordance with the contract with Barron. And if you would say that then there was $6 million, $6 million worth of work, of which there were other contractors who did the work. And if you listen to the appellee, then nothing was permanent, because everything was removed. The, and the unsigned change orders, that's not an issue in this court. Am I on my time up? Thank you, Judge. Yes, you just finished this thought. All right, now I'm good. Thank you very much, Your Honors. Okay, thank you. Thank you both, and we'll take the matter under advisement.